**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 31, 2018**

# In the Court of Appeals of Georgia

A17A1430.  EVERSON  v.  DEKALB  COUNTY  SCHOOL  SE-055
    DISTRICT et al.

SELF, Judge.

Ronald Everson appeals from the trial court's order dismissing his complaint against the DeKalb County School District ("the School District") and its former superintendent, Crawford Lewis. Everson asserts that his claims are not barred by sovereign immunity and that the allegations of his complaint were sufficient to preclude dismissal for failure to state a claim. For the reasons explained below, we affirm the portion of the trial court's order dismissing the School District and the claims against Lewis in his official capacity. We reverse the trial court's dismissal of Everson's claims against Lewis in his personal capacity for wrongful termination, punitive damages, and attorney fees.

The record shows that Everson named the following five defendants in his complaint: the School District; Crawford Lewis, the superintendent of the School District; Kenneth Bradshaw, the lead law enforcement officer at Columbia High School; Doug Sanders, the principal of Columbia High School; and Jeannette Moss, the assistant principal of Columbia High School. Everson asserted causes of action for false arrest and malicious prosecution, slander and libel, and wrongful termination. He sought back pay and reinstatement, damages for emotional distress, punitive damages, and attorney fees under OCGA § 13-6-11.

The complaint alleges that Everson was the plant engineer of Columbia High School with custody of all keys and full access to the school. During 2006, the high school was undergoing renovations performed by Anthony Pope's company, Merit Construction. According to Everson, he was "often on the property on the weekend to open the property to the construction workers. [He] saw on several occasions money exchange hands between Anthony Pope and Defendant Lewis." He alleges that he "told Defendant Sanders about these illegal monetary exchanges and Defendant Sanders did nothing about Plaintiff's complaints." The complaint does not explicitly allege when these events transpired.

On May 23, 2008, Sanders, Bradshaw, and Moss "accused [Everson] of theft by taking of some air conditioning units which were in a trailer located at Columbia High School." Everson claims that Sanders and Moss "falsely stated that [he] did not have permission to be on the property on the weekend the units were stolen, knowing they often called [him] themselves to have him come out on the weekends to open the property for the construction workers." Bradshaw "swor[e] out a warrant for theft by taking based off false information or no information directly linking [Everson] to the theft," and Everson was subsequently indicted for burglary. On June 23, 2008, Lewis "requested for [Everson] to come to his office and fired him" based upon the charges against him. After the charges were dismissed, Lewis and Sanders refused to reinstate Everson. Approximately two years later, "Lewis was indicted for, among other things, illegally receiving money from Pope for construction contracts. Columbia High School was one of the schools listed in the indictment."

After service was perfected upon the School District and Lewis,[1] they moved to dismiss the complaint. The School District asserted that Everson's claims against it were barred by the doctrine of sovereign immunity and that each of his individual

---

[1] The record contains no indication that service was ever made upon the remaining three individual defendants, and these defendants made no appearance in the case below.

theories of recovery were subject to dismissal for failure to state a claim. Lewis adopted the School District's motion with regard to his official acts and asserted that he was entitled to qualified immunity for the actions asserted against him in his individual capacity. The trial court held a hearing, granted both motions, and dismissed Everson's complaint with prejudice.

1. *Sovereign Immunity*. "We review de novo a trial court's grant of a motion to dismiss on sovereign immunity grounds, bearing in mind that the party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver." (Citation and punctuation omitted.) *Cowart v. Ga. Dept. of Human Svcs.*, 340 Ga. App. 183 (796 SE2d 90) (2017). See also *Ga. Dept. of Labor v. RTT Assoc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016).

In Georgia, sovereign immunity "protect[s] governments at all levels from unconsented-to legal actions." *Gilbert v. Richardson*, 264 Ga. 744, 746 (1) (452 SE2d 476) (1994). In 1991, an amendment to Georgia's Constitution authorized our General Assembly to

> waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and

4

employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide.

Ga. Const. of 1983, Art I, Sec. II, Par. IX (a). Under this authority, the General Assembly enacted the Georgia Tort Claims Act, OCGA § 50-21-20 et seq. "The Georgia Tort Claims Act provides for a limited waiver of the state's sovereign immunity for the torts of its officers and employees, but it expressly excludes school districts from the waiver. OCGA § 50-21-22 (5)." *Wellborn v. DeKalb County School District*, 227 Ga. App. 377, 379 (4) (489 SE2d 345) (1997). Consequently, Everson's tort claims against the School District and Lewis, in his official capacity, are barred by the doctrine of sovereign immunity. See id.; *Price v. Dept. of Transp.*, 257 Ga. 535, 537 (361 SE2d 146) (1987) (suits against public employees in official capacities are in reality suits against the state; employees so sued are entitled to sovereign immunity).

Everson's claims for wrongful termination and reinstatement against the School District and Lewis, in his official capacity, are also barred by the doctrine of sovereign immunity. While "the defense of sovereign immunity is . . . waived as to any action ex contractu for the breach of any written contract . . . entered into by the state or its departments and agencies," Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c),

5

Everson's complaint fails to allege that a written employment contract existed between himself and the School Board, and the personnel policies asserted in the complaint fail to create a contract of employment. See *Tacket v. Ga. Dept. of Corrections*, 304 Ga. App. 310, 312 (1) (696 SE2d 359) (2010), disapproved on the other grounds, *Wolfe v. Bd. of Regents*, 300 Ga. 223, 232 (2) (d), n. 5 (794 SE2d 85) (2016). Accordingly, Everson has failed to meet his burden of demonstrating a waiver of sovereign immunity for these claims. See *Tricoli v. Watts*, 336 Ga. App. 837, 838-840 (2) (783 SE2d 475) (2016); *DeKalb County v. Kirkland*, 329 Ga. App. 262, 265 (764 SE2d 867) (2014).

2. *Qualified Immunity of Lewis*. Government officials sued in their individual capacity are offered limited protection from suits.

> The doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity. Official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

6

(Citations, punctuation and footnote omitted.) *Todd v. Brooks*, 292 Ga. App. 329, 330 (1) (665 SE2d 11) (2008). In this case, the parties agree that Lewis's liability turns on whether he acted "with actual malice or with actual intent to cause injury in the performance of [his] official function[]." Ga. Const. of 1983, Art. I, Sec. II, Par IX (d). In his claim for wrongful termination,[2] Everson claims that Lewis terminated him because "Lewis knew [Everson] had seen the illegal activities of . . . Lewis and Pope." In his claim for punitive damages, Everson alleges that the "Defendants, individually and collectively, maliciously and intentionally injured [him]."

In his appellate brief, Lewis asserts that Everson's complaint did "not plead that Defendant Lewis acted willfully, wantonly, maliciously, or with intent to harm Plaintiff such that the limited exception to qualified immunity would apply." In Lewis's view, the complaint "summarily implied that [he] terminated Plaintiff for other reasons, which [Everson] describes as his witnessing of alleged 'illegal activities.'"

It is true that "actual malice [is] something more than implied malice. . . ." *Phillips v. Hanse*, 281 Ga. 133, 135 (2) (637 SE2d 11) (2006).

---

[2] Everson's claims for false arrest, malicious prosecution, slander, and libel were not asserted against Lewis.

7

[A]ctual malice requires a deliberate intent to do wrong. [The] deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs. [E]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity.

(Citations and punctuation omitted.) *Greenway v. Northside Hosp.*, 328 Ga. App. 473 (763 SE2d 488) (2014).

When considering the question of whether the trial court erred in granting Lewis's motion to dismiss based upon qualified immunity, we must remember that

[a] motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

(Citations and punctuation omitted.) *Agnes Scott College v. Hartley*, 330 Ga. App. 575, 577 (2) (768 SE2d 767) (2015). Here, we cannot say that Everson would not be entitled to relief "under any state of facts which could be proved in support of his claim." Id. Contrary to Lewis's proposed construction of the complaint, Everson asserts that Lewis "maliciously and intentionally" injured him, and the allegation that

8

Lewis fired him "*because* Defendant Lewis knew [Everson] had seen the illegal activities of Defendant Lewis and Pope" is adequate to withstand a motion to dismiss at this preliminary stage of the litigation. (Emphasis supplied.) Accordingly, "questions of this complaint's evidentiary sufficiency must await summary judgment" on the issue of whether Lewis is entitled to qualified immunity. *Liberty County School District v. Halliburton*, 328 Ga. App. 422, 429 (4) (762 SE2d 138) (2014), overruled on other grounds, *Rivera v. Washington*, 298 Ga. 770, 780, n. 7 (784 SE2d 775) (2016).

3. *Failure to State a Claim for Wrongful Termination*. Everson claims that the trial court erred by dismissing his wrongful termination claim against Lewis. We agree.

When considering this argument, it is important to examine the particular nature of Everson's claim. He asserts in his complaint that he "at all times had a property interest in continued employment with [the] School District," as well as "a right to procedural and substantive due process because he could only be terminated for cause which was made by reference to the personnel policies."

In Georgia,

[a] policy that public employees can be terminated only for cause does give the employee an interest in continued employment for purposes of procedural due process analysis. But that does not mean that a manual stating the policy and setting forth procedures for its implementation is a contract. For purposes of the breach of contract claim, we look only to Georgia law and make no distinction between public and private employees. And under Georgia law, personnel manuals stating that employees can be terminated only for cause and setting forth termination procedures are not contracts of employment; failure to follow the termination procedures contained in them is not actionable. In other words, if a public employee has a personnel manual stating she can be fired only for cause, she is entitled to procedural due process, the adequacy of which is governed by federal law. But if the requirements of due process are met, the employer's failure to follow all the procedures in the manual does not give rise to an action for breach of contract.

(Citations omitted.) *Jones v. Chatham County*, 223 Ga. App. 455, 459 (5) (477 SE2d 889) (1996). Notably, "an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component." (Punctuation and footnote omitetd.) *Angell v. Hart*, 232 Ga. App. 222, 224 (3) (501 SE2d 594) (1998). Accordingly, the trial court erred by dismissing Everson's wrongful termination claim against Lewis grounded upon a violation of his procedural due process rights. See *Lathrop v. Deal*, 301 Ga. 408, 434 (III) (C) (801

10

SE2d 867) (2017) (noting that public officers may be sued in their individual capacities for official acts that are alleged to be unconstitutional). However, we affirm the trial court's dismissal of Everson's substantive due process claim and any breach of contract claim asserted in the complaint.

4. *Punitive Damages and Attorney Fees*. As the dismissal of Everson's claims for punitive damages and OCGA § 13-6-11 attorney fees was dependent upon the dismissal of all of the underlying claims against Lewis, we also reverse the trial court's dismissal of these claims to the extent they are asserted against Lewis in his individual capacity. In so holding, we note that Lewis's only argument below with regard to punitive damages was an adoption of the School District's argument that it is against public policy to award punitive damages against public entities. He made no argument with respect to Everson's right to recover attorney fees. Accordingly, nothing in this opinion should be construed as a ruling on any other ground which might preclude Everson from recovering punitive damages or OCGA § 13-6-11 attorney fees from Lewis.

*Judgment affirmed in part, reversed in part. Dillard, C. J., and Ray, J., concur.*