**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 27, 2024**

# In the Court of Appeals of Georgia

A24A0416. CITY OF ATLANTA v. MLK PROPERTIES, LLC.

PADGETT, Judge.

MLK Properties, LLC ("MLK Properties") sued the City of Atlanta ("the City"), alleging the City had wrongfully demolished its property. The City moved to dismiss based on insufficient ante litem notice and sovereign immunity. The trial court denied the motion, and the City sought interlocutory review of the ruling. We granted the application, and this appeal follows. For the reasons below, we affirm in part, reverse in part, and remand.

A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce

> evidence within the framework of the complaint sufficient to warrant a
> grant of the relief sought.

*Williams v. DeKalb County*, 308 Ga. 265, 270 (1) (840 SE2d 423) (2020). This Court reviews de novo a trial court's ruling on a motion to dismiss, accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of the plaintiff. Id.

So viewed, MLK Properties owns property at 870 Martin Luther King Jr. Boulevard SW, Atlanta, Georgia 30314 ("the Property"). In 2019, MLK Properties' president and CEO worked with the City to resolve code violations with the building ("the Building") on the Property. According to MLK Properties, it took all actions needed to bring the Building and Property into compliance. However, on January 25, 2021, the City demolished the Building.

Subsequently, the City filed a "Claim of Lien" on the Property in the amount of $671,128.42, which the City claimed was payment for an asbestos survey and the cost of demolition. MLK Properties sent ante litem notice to the City pursuant to OCGA § 36-33-5. In the notice, MLK Properties alleged, among other things, that the City failed to comply with certain procedural requirements before demolishing the

Building. MLK Properties also contended the City acted wrongfully and that its actions constituted an unconstitutional taking of its property. Regarding the damages, the notice provided:

> The total amount of loss is not fully known at this time, but it is expected to exceed $671,128.42 due to the Claim of Lien on the property as well as the improper demolition of the Building. MLK Properties, LLC is also incurring attorney's fees in this matter to respond to the City's negligence. MLK Properties, LLC seeks compensation of existing damages and payment of its attorney's fees in this matter.

MLK Properties subsequently filed suit against the City, alleging claims related to negligence, intentional torts, declaratory judgment, injunctive relief, and attorney fees. The City filed motions to dismiss, arguing that the ante litem notice did not comply with OCGA § 36-33-5 (e) in that MLK Properties did not seek a specific amount of monetary damages. The City also argued it was entitled to sovereign immunity.

After a hearing, the trial court denied the City's motions. Although the trial court recognized that ante litem notice was required for MLK Properties' claims of negligence and negligence per se, the trial court found that the ante litem notice sufficiently complied with OCGA § 36-33-5. The trial court further found that

sovereign immunity did not bar any of MLK Properties' remaining claims. We granted

the City's application for interlocutory appeal from this order, and this appeal follows.

1. According to the City, the trial court erred in finding that MLK Properties' ante litem notice complied with OCGA § 36-33-5 (e). We agree.

Pursuant to OCGA § 36-33-5, the ante litem notice statute, anyone who intends to assert a claim against a municipal corporation for monetary damages arising from personal injuries or property damage must first provide written notice of the claim within six months of the event on which the claim is based. OCGA § 36-33-5 (a), (b). Such notice must include "the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury." OCGA § 36-33-5 (b). OCGA § 36-33-5 (e) provides:

> *The description of the extent of the injury required in subsection (b) of this Code section shall include the specific amount of monetary damages being sought from the municipal corporation. The amount of monetary damages set forth in such claim shall constitute an offer of compromise.* In the event such claim is not settled by the municipal corporation and the claimant litigates such claim, the amount of monetary damage set forth in such claim shall not be binding on the claimant.

(emphasis added).

"The giving of the ante litem notice in the manner and within the time required by the statute is a condition precedent to the maintenance of a suit on the claim." *City of Albany v. GA HY Imports*, 348 Ga. App. 885, 888 (825 SE2d 385) (2019) (citation and punctuation omitted). "The ante litem notice statute, however, is in derogation of the common law, which did not require such ante litem notice; therefore it must be strictly construed and not extended beyond its plain and explicit terms." Id. (citation and punctuation omitted).

In 2014, OCGA § 36-33-5 was amended to add subsection (e), requiring the claimant to "include the specific amount of monetary damages being sought." See Ga. L. 2014, p. 125, § 1. Before the enactment of subsection (e), the Georgia Supreme Court applied a "substantial compliance" standard to subsection (b)[1] because "[t]he act recognizes, by the use of the words 'as nearly as practicable,' that absolute exactness need not be had." *Atlanta Taxicab Co. Owners Assn. v. City of Atlanta*, 281

---

[1] OCGA § 36-33-5 (b) provides, in relevant part that

> [w]ithin six months of the happening of the event upon which a claim against a municipal corporation is predicated, the person, firm, or corporation having the claim shall present the claim in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury.

Ga. 342, 352 (5) (638 SE2d 307) (2006) (citation and punctuation omitted). But subsection (e) does not contain the same statutory language as subsection (b). See *City of College Park v. Steele*, ___ Ga. App. ___, ___ (Case No. A24A0143 May 23, 2024). Neither this Court nor our Supreme Court has expressly addressed whether the former substantial compliance standard should be applied to subsection (e). See, e.g., *City of Alpharetta v. Francis*, 366 Ga. App. 454, 456 (1) n.2 (883 SE2d 400) (2023). However, this Court has held that even if only substantial compliance is required to fulfill a claimant's obligation under subsection (e), "a notice does not substantially comply with [it] unless a specific amount is given that would constitute an offer that could be accepted by the municipality." *Harrell v. City of Griffin*, 346 Ga. App. 635, 638 (1) (816 SE2d 738) (2018). Thus, this Court has repeatedly held that ante litem notices did not comply with the statute where the notices stated that damages were expected to exceed a certain sum. For example, in *Manzanares v. City of Brookhaven*, 352 Ga. App. 293, 294 (834 SE2d 358) (2019), the plaintiff's notice stated that her investigation was ongoing, but she believed "the value of th[e] claim may exceed $250,000.00." We concluded the notice did not comply with OCGA § 36-33-5 (e) because, although it stated a dollar figure, it did not convey the specific monetary

6

damages being sought from the municipality and was not specific enough to constitute an offer of compromise that could be accepted by the municipality. Id. at 296-297 (1).

Similarly, in *Pickens v. City of Waco*, 352 Ga. App. 37 (833 SE2d 713) (2019), the plaintiff's ante litem notice stated: "To the extent that you require me to provide a dollar value for this claim, I believe that the value of this claim may exceed $300,000.00." Id. at 38 (punctuation omitted). There, we found such notice insufficient, explaining that "an open-ended estimate of potential damages does not constitute a real offer of compromise which the [municipality] could have accepted as contemplated by the language and purpose of OCGA § 36-33-5 (e)." Id. at 44 (1).

Here, MLK Properties' ante litem notice was flawed in the same manner as those in *Manzanares* and *Pickens* because it lacked a specific amount of monetary damages being claimed that were exact enough to constitute an offer of compromise. Indeed, the ante litem notice made clear that MLK Properties did not know the amount of damages, but expected it to exceed $671,128.42. As MLK Properties provided only an open-ended estimate of potential damages, it did not make an offer capable of being accepted as required by OCGA § 36-33-5 (e). See *Manzanares*, 352 Ga. App. at 296-297 (1). Because MLK Properties' ante litem notice did not comply

7

with OCGA § 36-33-5, the trial court erred in denying the City's motion to dismiss MLK Properties' claims for negligence and negligence per se, and we reverse.

In a related argument, the City asserts that MLK Properties' defective ante litem notice also bars MLK Properties' trespass and inverse condemnation claims. We disagree.

As we stated above, because the ante litem notice requirement in OCGA § 36-33-5 is in derogation of the common law, we construe the statute strictly. See *City of Albany*, 348 Ga. App. at 888. By its express terms, OCGA § 36-33-5 refers to damages caused by negligence. See *West v. City of Albany*, 300 Ga. 743, 748 (797 SE2d 809) (2017). In its complaint, MLK Properties alleged a trespass claim based on the City's *intentional* interference with its property rights, and its inverse condemnation claim alleged that the City *wrongfully and intentionally* demolished the building. Given the allegations of intentional acts in the complaint, these claims do not fail as a matter of law based on the insufficiency of the ante litem notice. See id.; compare *Wright v. City of Greensboro*, 350 Ga. App. 685, 690-691 (1) (a) (830 SE2d 228) (2019) (where complaint specifically alleged that continuing nuisance was caused by negligence, plaintiff was required to comply with ante litem notice).

Given the allegations in MLK Properties' complaint, which we accept as true, and strictly construing OCGA § 36-33-5, as we must, we conclude the ante litem notice requirements are inapplicable to MLK Properties' claims for trespass and inverse condemnation. Accordingly, the trial court properly denied the City's motion to dismiss the claims for trespass and inverse condemnation based on the lack of ante litem notice.[2]

2. In several related arguments, the City contends that sovereign immunity also bars MLK Properties' claims. The trial court found that sovereign immunity had been waived pursuant to a 2020 constitutional amendment, which waives immunity for certain actions seeking declaratory relief. See Ga. Const., Art. I, Sec. II, Par. V (b) (1); Ga. L. 2020, Act 596, p. 917 § 1. In the alternative, the trial court found immunity had been waived pursuant to the Just Compensation Provision of the state Constitution. The City challenges these rulings, arguing no such waiver occurred and this it is entitled to dismissal on sovereign immunity grounds.

> We review de novo a trial court's grant of a motion to dismiss on
> sovereign immunity grounds, bearing in mind that the party seeking to

---

[2] The City does not argue the ante litem notice statute applied to MLK Properties' claims for declaratory judgment and injunctive relief.

benefit from the waiver of sovereign immunity has the burden of proof to establish waiver. Because a motion to dismiss on sovereign immunity grounds is based upon the trial court's lack of subject matter jurisdiction, the trial court is entitled to make factual findings necessary to resolve the jurisdictional issue.

*Cowart v. Ga. Dept. of Human Svcs.*, 340 Ga. App. 183, 183 (796 SE2d 903) (2017) (citations and punctuation omitted). Where, as here, the trial court made no factual findings in its order, we view the factual allegations in the complaint as true. See id.

(a) *Declaratory Relief.* Although municipalities are generally immune from civil liability under the doctrine of sovereign or municipal immunity, such immunity may be waived by the General Assembly. See Ga. Const. of 1983, Art. IX, Sec. II, Par. IX; OCGA § 36-33-1 (a); *Gatto v. City of Statesboro*, 312 Ga. 164, 166-167 (860 SE2d 713) (2021). Sovereign immunity also may be waived by the Constitution itself. See *Starship Enterprises of Atlanta, Inc. v. Gwinnett County*, ___ Ga. ___, ___ (2) (Case No. S24A0361, June 11, 2024). In November 2020, the Georgia Constitution was amended to partially waive sovereign immunity as follows:

Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county,

10

consolidated government, or municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (1).

The City argues that the 2020 amendment's waiver of sovereign immunity is not implicated here. We agree.

The purpose of the Declaratory Judgment Act "is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" OCGA § 9-4-1.

> [A] petition for declaratory relief will lie only when there be some fact or circumstances which necessitates a determination of disputes, not merely for the purpose of enforcing accrued rights, but in order to guide and protect the petitioner from uncertainty and insecurity with respect to the propriety of some future act or conduct which is properly incident to his alleged rights, and which future action without such direction might reasonably jeopardize his interest.

11

*Cobb County v. Floam*, ___ Ga. ___, ___ (2) (Case No. S24A0599, May 9, 2024) (citation and punctuation omitted).

Here, nothing in MLK Properties' complaint can be reasonably construed as a claim for declaratory relief within the meaning of the 2020 constitutional amendment. See Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (1). In its declaratory judgment claim, MLK Properties' asserted that the "astronomical" lien was based on the alleged presence of asbestos in the demolished Building, despite a prior inspection that did not find any asbestos. Any alleged uncertainty on MLK Properties' part does not concern its future conduct. Instead, by asking to declare the lien invalid, MLK Properties is attempting to enforce rights that had already accrued. It is seeking recompense for an allegedly excessive lien. Given that "[a] request for declaratory relief is a request for 'prospective relief—relief from the threat of wrongful acts and injuries yet to come,'" and here, the allegedly wrongful acts have already occurred, MLK Properties' declaratory relief claim is not the proper vehicle to litigate this issue. *Floam*, ___ Ga. at ___ (2). Under these circumstances, the allegations in MLK Properties' complaint are insufficient to support a claim for declaratory relief. See id. And since the claim is not one for declaratory relief, it does not fall within the

constitutional waiver of sovereign immunity for such actions. Accordingly, the trial court erred in not dismissing MLK Properties' declaratory judgment claim, and we reverse.

(b) *Just Compensation.* The Constitution provides, in relevant part, that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Ga. Const. of 1983, Art. I, Sec. II, Par. I. The Supreme Court has recognized that this Just Compensation Provision necessarily waives sovereign immunity for inverse condemnation actions, meaning such actions brought by a private landowner "alleging the taking or damaging of the private property for public purposes without the initiation of eminent domain proceedings." *Dept. of Transp. v. Mixon*, 312 Ga. 548, 548-549 (1), n.1 (864 SE 2d 67) (2021). In its order denying the motion to dismiss, the trial court ruled that MLK Properties' claims for injunctive relief, trespass, and inverse condemnation were thus not barred by sovereign immunity.[3] On appeal, the City asserts that the Constitution's Just Compensation Provision does not waive sovereign immunity because the demolition

---

[3] The trial court also found that MLK Properties' declaratory judgment claim was not barred. As we found in Division (2) (a), however, MLK Properties has not alleged a viable declaratory judgment claim.

of MLK Properties' building was an exercise of police power rather than the "taking" of property for public use.

In its complaint, MLK Properties asserted an inverse condemnation claim,[4] and "[s]uch a claim is properly set forth where . . . [a] municipality takes some affirmative action for public purposes causing a nuisance or trespass which, in turn, results in the diminished utility and functionality of a private owner's land." *City of Tybee Island, Ga. v. Live Oak Group*, 324 Ga. App. 476, 479 (751 SE2d 123) (2013) (citation and punctuation omitted). A claim that a city has improperly destroyed a building seems to fit within the sort of affirmative action that could constitute such a taking. Accordingly, we agree with the trial court to the extent it found that MLK Properties' claims for inverse condemnation and trespass are not barred by sovereign immunity.

MLK Properties also raised an injunctive relief claim against the City. The Supreme Court has recognized that the state Constitution's Just Compensation Clause waives sovereign immunity—by necessary implication—for certain claims of injunctive relief. *Mixon*, 312 Ga. at 550 (2) (a). The Just Compensation Clause "waives sovereign immunity for claims seeking injunctive relief . . . where the

---

[4] Although MLK Properties alleged claims for both trespass and inverse condemnation, the claims are essentially duplicative.

authority effecting a taking or damaging has not invoked the power of eminent domain." Id. at 548. MLK Properties alleged that the destruction of the Building constituted a taking and that the City improperly placed a lien on its property, interfering with MLK Properties' rights. MLK Properties requested relief by way of a temporary restraining order, an interlocutory injunction, and a permanent injunction which sought to cancel the lien and to restore the parties to the status quo. Based on MLK Properties' allegations and relief requested, this sort of injunctive relief claim arguably can constitute a claim where there has been a limited waiver of sovereign immunity. See *Kitchens v. Lincoln County*, 368 Ga. App. 349, 352 (890 SE2d 121) (2023) ("The waiver allows an injunction only to stop the taking or damaging until such time as the authority fulfills its legal obligations that are conditions precedent to eminent domain."). Accordingly, MLK Properties' injunctive relief claim is not barred by sovereign immunity.

Our holding does not mean that MLK Properties is entitled to relief; whether the destruction of its property is proven to have been an authorized exercise of the City's police power or was otherwise lawful is a matter that remains to be determined.[5]

---

[5] We note that, while abatement of a nuisance can be a valid regulation of private property, our courts "test[] regulation of property to determine that the government

15

At this stage, we address only whether sovereign immunity has been waived; "[a] waiver of sovereign immunity says nothing about whether a claim is viable on the merits." *Mixon*, 312 Ga. at 564 (2) (e).

3. Finally, the City argues the trial court erred in denying its motion to dismiss MLK Properties' negligence claims because its demolition of the Building was exercised pursuant to its police powers and it was immune from liability in performing a governmental function. Given our holding in Division 1 that MLK Properties' defective ante litem notice bars its negligence claims, this issue is moot.

*Judgment affirmed in part, reversed in part, and remanded. Dillard, P. J., and Brown, J., concur.*

---

has not exceeded its police power, for excessive regulation of property violates the due process clause and the prohibition against taking property for public use without compensation." *Pope v. City of Atlanta*, 242 Ga. 331, 334 (249 SE2d 16) (1978) (citation omitted).